UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GUY WILLIAM STANFORD, SR.,

    Plaintiff,

    vs.

Case No. 3:16-cv-01745
JUDGE ALETA A. TRAUGER
Magistrate Judge King

SOCIAL SECURITY ADMINISTRATION,

    Defendant.

To:   The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 14)("Motion for Judgment") and Memorandum in Support (Doc. No. 15), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 16), and the administrative record (Doc. No. 11).[1] For the following reasons, the undersigned **RECOMMENDS** that the Motion for Judgment be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that final judgment be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[1] Citations to pages in the Administrative Record will appear as "Tr. ___."

1

## Introduction

Plaintiff filed his application for benefits in December 2013, alleging that he has been disabled since August 1, 2012, as a result of irritable bowel syndrome ("IBS"), PTSD, sleep apnea/insomnia, and traumatic brain injury. Tr. 146, 212. The application was denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ"). On January 12, 2016, Plaintiff, represented by counsel, appeared and testified at that hearing, as did Ernest W. Brewer, Ph.D., who testified as a vocational expert. Tr. 32-56.

In a decision dated February 5, 2016, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act from his alleged date of onset through the date of the administrative decision. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 5, 2016.

This action was thereafter timely filed. This Court has jurisdiction over the matter. 42 U.S.C. § 405(g).

## The Findings and Conclusions of the ALJ

In her decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic fatigue syndrome, glaucoma, irritable bowel syndrome, fibromyalgia, hearing loss, obstructive sleep

apnea, mood disorder, N.O.S., and post-traumatic stress disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can lift and or carry 50 pounds occasionally and 25 pounds frequently; sit for six hours total in an eight-hour workday; stand and/or walk for six hours total in an eight-hour workday; never climb ladders, ropes or scaffolds; avoid all exposure to hazards, such as machinery and heights. He must work around moderate noise due to tinnitus and hearing loss. He has monocular vision, no limitation out of the left eye. He can understand and carry out simple and detailed one to three step instructions and tasks. He can maintain concentration, persistence and pace for two hours at a time over an eight-hour workday. He can interact occasionally with co-workers and supervisors, but should not work directly with the general public. He can adapt to infrequent changes in the workplace.

6. The claimant is capable of performing past relevant work in housekeeping. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2012, through the date of this decision (20 CFR 404.1520(1)).

Tr. 14, 16, 25.

### Plaintiff's Claims

Plaintiff asserts the following claims:

1. The ALJ's failure to correctly evaluate and weigh the disability rating awarded Plaintiff by the VA is error that requires remand.

2. The ALJ's failure to appropriately weigh Plaintiff's credibility is error that requires remand.

3

Memorandum in Support (Doc. No. 15, PageID# 1588, 1591).[2]

## Standard of Review

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)(internal quotation marks and citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Services*, 667 F.2d 524, 536 (6th Cir. 1982). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Commissioner Social Security Administration,* 402 F.3d 591, 595 (6th Cir. 2005)(citing *Warner v. Comm'r of Soc. Sec.*,

---

[2] Plaintiff also asserts, in passing and in conclusory fashion, that his mental impairments meet Listings 12.04 and/or 12.06. Memorandum in Support (Doc. No. 15, PageID# 1591, 1595). This assertion appears to be co-extensive with Plaintiff's claim that the ALJ erred in reaching a conclusion inconsistent with that of the VA. The undersigned will therefore not consider this assertion as a separate claim.

4

375 F.3d 387, 390 (6th Cir. 2004)).

### Summary and ALJ's Evaluation of Relevant Evidence

At the administrative hearing, Plaintiff testified to a number of medical conditions. He first experienced fatigue in 2009 and the condition has worsened over time. He cannot sleep, and suffers memory loss and mood swings. Tr. 38-39. Medication has not alleviated the condition. Tr. 39. He also suffers from PTSD, which makes it difficult for him to trust people. Tr. 40. He is angry, depressed and suicidal. *Id*. His attention span is very short. *Id.* Despite medication for the condition, he still has nightmares and hears voices. Tr. 43. His PTSD caused him to lose his last two jobs. Tr. 41. *See also* Tr. 44 ("I was terminated."). He cannot see out of his right eye, Tr. 41, and can "barely" read with his left eye, even with glasses. Tr. 47. He would not be able to see an open door without having "to go real up close to it." Tr. 49. He has difficulty hearing because of constant ringing in his ears. Tr. 42. He also has IBS, which requires that he use a toilet "all the time." Tr. 42. On a "good day," he must use the bathroom nine (9) times; on a "bad day," he must use a bathroom 13 to 15 times. Tr. 42-43. He also suffers from sleep apnea, which prevents him from getting rest. Tr. 43. He sometimes goes 72 hours without sleep. *Id*. Plaintiff also testified that he drives, can attend church for more than an hour at a time twice per month, Tr. 45, and does his own house cleaning and grocery shopping. *Id*.

Plaintiff is a military veteran, having served as a cook and a boxer from 1983 to 1991, including in Desert Storm. Tr. 37, 218. Most of the evidence in the record reflects Plaintiff's treatment by the Veteran's Administration ("VA"). The VA has adjudicated Plaintiff to be 100 percent disabled as a result of chronic fatigue syndrome, PTSD,

5

irritable colon, eczema, and fibromyalgia. Tr. 662. The ALJ noted that adjudication, but also noted that "the [VA] rates disability under a different system than that of the Social Security Administration." Tr. 17.

The ALJ went on to consider, comprehensively and in detail, the medical record, which the ALJ fairly characterized as "extensive [but containing] hundreds of pages of duplicates of rather unremarkable evidence." Tr. 17-22. The ALJ noted, in particular, the June 2014 evaluation by Kimberly C. Marsham, Ph.D., a neuropsychologist. Tr. 20-21. Dr. Marsham attempted to administer a "battery" of neuropsychological tests, but that effort was "abbreviated due to [Plaintiff's] intentional negative skewing of the cognitive test results (i.e., performance significantly worse than chance)." Tr. 454. Dr. Marsham's lengthy report, Tr. 454-59, reflects a comprehensive review of Plaintiff's psychiatric history and diagnoses, mental status examination, and test results, which Dr. Marsham characterized as "uniformly invalid." Tr. 457. Dr. Marsham summarized her findings and opinions as follows:

> Based on today's test results and medical records that document inconsistencies in [Plaintiff's] self-reported history and symptom patterns, the patient meets criteria for malingering of cognitive deficits. Given this finding, it is reasonable to assume that his pattern of extreme responding on the BDI-II [Beck Depression Inventory-II] was also likely exaggerated. Moreover, records show that his report of his "traumatic" experiences in the military has substantially changed over the years, from not seeing any dead bodies to reportedly seeing severely disfigured ones. Given his statements about being "due a rating increase," having a pending PTSD VA benefits claim, and becoming defensive when asked about these, it appears reasonable to conclude that there is sufficient evidence to question the veracity of ALL of his self-reported symptoms. At this point, the only justifiable DSM-5 diagnosis is Malingering, based on the worse-than-chance test results and the presence of a strong monetary incentive for doing so.

6

> Unfortunately, this skewed performance obscures the ability to detect the presence of any actual cognitive deficits. Hence, it is possible that he could have some mild residual cognitive issues from, for example, repeated blows to the head while boxing, but his intentional exaggeration has prevented these, if present, from being detected.

Tr. 420-21, 458 (emphasis in the original).

In light of the medical evidence, including Dr. Marsham's report, the ALJ looked askance at the VA's award of benefits and found that Plaintiff "is simply not credible." Tr. 23. For example, the ALJ noted, Tr. 16, that Plaintiff's gastroenterologist concluded that Plaintiff could not have taken his medication for IBS as prescribed, despite Plaintiff's statement that he had done so. *See* Tr. 319. The ALJ also noted, Tr. 17, that Plaintiff had reported to his gastroenterologist in January 2014 that he was "laid off" from his last job, Tr. 281, but had reported to the Social Security Administration that his job ended because of his medical conditions, Tr. 212.

> The evidence was also unimpressive at best and actually contradicted his testimony that his conditions worsened in 2009 (eight years after he was discharged from the military). In February 2012, he reported losing his insurance and was not using CPAP anymore. He also denied a myriad of symptoms upon review, to include: fatigue, vision or hearing problems, dysphagia, abdominal pain, nausea, vomiting, hematememesis, diarrhea, constipation, melena, hematochezia, bladder/bowel incontinence, joint effusions, headaches, dizzy spells, memory loss, progressive weakness, gait abnormality, focal neurological deficits, anhedonia, hallucinations, delusions, and suicidal/homicidal ideation. In October 2012, he reported to his treating psychiatrist that his physical health was fairly stable.
>
> \*\*\*
>
> To reiterate, the theme that radiated through treatment for IBS was one of non-compliance. For example, in January 2013, he reported taking medications two to three times per day, yet had not refilled either of his prescriptions, initially prescribed for 60 pills in October 2012. His treating FNP actually stated that he was apparently taking medication on a very erratic schedule. . . .

7

In March 2013, the claimant again denied a myriad of symptoms to include fatigue; vision and hearing problems; abdominal pain; nausea; vomiting; diarrhea; constipation; bladder/bowel incontinence; joint effusions; and any neurological symptoms, to include progressive weakness, memory loss, dizzy spells, and abnormal gait. Examination, likewise, revealed an alert, fully oriented individual with no motor/sensory loss.

Regarding his mood disorder and PTSD, mental status examinations consistently revealed a fairly groomed, pleasant and cooperative individual with normal speech, euthymic mood, full affect, logical and goal-directed thought processes, and grossly intact cognition/memory. This, despite his waxing and waning of symptoms.

Reducing his credibility even further was the ultimate diagnosis of malingering during the June 2014 neuropsychological evaluation due to the inconsistencies of self-reports and total lack of credibility of test results. Specifically, the claimant denied having any difficulty with basic activities of daily living or with driving a vehicle and managed his own bills. Yet, he enthusiastically endorsed having difficulty with remembering to take his medications "5 or 6 days a week." He then recited the names of the medications he forgot to take. He then stated that his memory problems began in 1991 and "have been stable since then." It was also noted that he initially denied witnessing anyone getting killed or any dead bodies in 2008; yet, reported witnessing a number of dead bodies, decomposing bodies and some with evidence of torture during his 2010 C&P examination, indicating secondary gain. The examiner also pointed out that while the claimant reported having chronic fatigue syndrome, this diagnosis was not noted in the records up to that point. Further, he performed so poorly on testing that his test results were actually lower than persons with intellectual disability and dementia. The examiner also asserted that C&P examiners should be alerted to the possibility of exaggerated symptom reporting. However, this seemed to have not been the case, as the claimant was later awarded 100 percent service-connected disability based on chronic fatigue syndrome. It was also difficult to understand how an individual with reported fatigue of such

severity, that it precluded almost all daily activities, could walk two miles before having to stop and rest.[3]

The claimant's testimony also only served to reduce his credibility, as he testified he could, essentially, not see anything. However, he drove alone to the hearing from Clarksville. Additionally, his PTSD symptoms did not prevent him from attending church for at least an hour; in addition, to attending Sunday school and/or Bible study as he testified; or from spending time teaching boxing to youths, as noted in the neuropsychological evaluation. The claimant's subjective complaints are not persuasive to the extent alleged.

Tr. 23-25 (citations to record omitted).

**Discussion**

1. <u>Veteran's Administration Disability Award</u>

The VA determined that Plaintiff is entitled to a finding of "individual unemployability" by reason of Plaintiff's PTSD and depressive disorder. *See* Tr. 132. Plaintiff contends that, because the VA's standard for individual unemployability is "strikingly close" to the disability standards of the Social Security Administration, the ALJ erred in concluding that Plaintiff is not disabled. *See* Memorandum in Support (Doc. No. 15, PageID# 1590).

The Commissioner's regulations make clear that another agency's disability determination is not determinative to the Social Security disability determination. 20 C.F.R. § 404.1504 ("A decision by . . . any other governmental agency about whether [a plaintiff is] . . . disabled . . . is based on its rules and is not our decision. . . . Therefore, a determination made by another agency that [a plaintiff is]. . . disabled . . . is not binding on us."). Although a VA

---

[3] Plaintiff reported to the Social Security Administration that he can walk two (2) miles before having to stop and rest. Tr. 247

disability rating "is entitled to consideration," *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013), the United States Court of Appeals for the Sixth Circuit has not specified the precise weight such a rating should receive when an ALJ makes a Social Security disability determination. *Id.* at 511 ("We have held that a disability rating from the Veterans Administration is entitled to consideration, but we have not specified the weight such a determination should carry when determining social security eligibility.")(citing *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984)). *See also LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 387-88 (6th Cir. 2013). Rather, such a determination is but one factor to be considered in the Social Security context; "the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case." *Ritchie*, 540 F. App'x. at 511. *See also Litteral v. Colvin,* No. 3:13-00561, 2014 WL 6997889, at *9 (M.D. Tenn. Dec. 10, 2014), report and recommendation adopted, No. 3:13-CV-00561, 2014 WL 7404056 (M.D. Tenn. Dec. 30, 2014). "ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *King v. Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 727 (E.D. Mich. 2011) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).

In the case presently before the Court, the ALJ acknowledged the VA determination, properly recognized that it was not binding, and proceeded to consider the entire record, including the VA's own medical records, in determining that Plaintiff is not disabled within the meaning of the Social Security Act. The ALJ's failure to give

greater weight to the VA determination applied the proper standard and enjoys substantial support in the record.

2. <u>ALJ's Credibility Assessment</u>

The ALJ found that Plaintiff "is simply not credible." Tr. 23. Plaintiff complains that, in making this credibility determination, the ALJ "erroneously relied solely on statements contained in [Dr. Marsham's report] and then moved on from there to make generalized, sweeping statements concerning [Plaintiff's] lack of credibility." Memorandum in Support (Doc. No. 15, PageID# 1591).

In evaluating a claimant's subjective complaints, an ALJ must determine whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the ALJ must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). An ALJ's credibility determination is accorded great weight and deference because of the ALJ's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, a court is

11

without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978). "As long as the ALJ cited substantial, legitimate evidence to support h[er] factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support an opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citation omitted).

Plaintiff's complaint that the ALJ based her credibility determination exclusively on Dr. Marsham's report and diagnosis of malingering is unfounded. A fair reading of the ALJ's comprehensive and detailed decision makes clear that the ALJ based her decision on the totality of the medical evidence and on internal inconsistencies in Plaintiff's testimony and reports to the Social Security Administration and to various medical providers. The ALJ clearly articulated her findings, which are amply supported by substantial evidence in the record. Under these circumstances, this Court is without authority to disturb those findings.

## Recommendation

In light of the foregoing, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. No. 14) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that final judgment be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

## Procedure on Objections

If any party seeks review by the District Judge of this report

and recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the report and recommendation, specifically designating the part thereof in question, as well as the basis for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days thereafter. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the report and recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

*s/Norah McCann King*
Norah M<sup>c</sup>Cann King
United States Magistrate Judge

October 20, 2017
 (Date)